**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8 IN THE UNITED STATES DISTRICT COURT

9 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 In re EXODUS COMMUNICATIONS, INC.      Master File No. C-01-2661 MMC
SECURITIES LITIGATION

12                                        **ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
ON CLAIMS ASSERTED BY PLAINTIFF
THOMAS WELCH; VACATING HEARING**

13

14
This Document Relates to: ALL ACTIONS     (Docket No. 289)
15                                      /

16

17        Before the Court is defendant Ellen Hancock's ("Hancock") motion, filed March 30,

18 2006, for summary judgment against plaintiff Thomas Welch ("Welch"), on the ground

19 Welch lacks standing to assert a claim under § 11 of the Securities Act of 1933.

20 Defendants Goldman, Sachs & Co., Merrill Lynch & Co., Morgan Stanley Dean Witter, and

21 J.P. Morgan (collectively, "Underwriter Defendants") have filed a joinder in the motion.

22 Welch has filed a "response" to the motion, to which Hancock has filed a reply.  Having

23 reviewed the papers filed in support of and in opposition to the motion, the Court finds the

24 matter appropriate for decision without oral argument, see Civil L.R. 7-1(b), VACATES the

25 June 9, 2006 hearing, and rules as follows.

26                                **BACKGROUND**

27        In the Corrected Third Amended Consolidated Class Action Complaint ("CTAC"),

28 filed April 29, 2005, lead plaintiffs Michael Klein ("Klein"), Teresi Trucking, Inc. ("Teresi"),

1 and William Friedman ("Friedman"), as well as additional named plaintiffs Martin Fox

2 ("Fox") and Welch assert claims for alleged violations of §§ 10(b) and 20(a) of the

3 Securities Exchange Act of 1934 and §§ 11 and 15 of the Securities Act of 1933.  (See

4 CTAC ¶¶ 343-365.)  In an order filed August 5, 2005, the Court dismissed with prejudice all

5 claims with the sole exception of the § 11 claim as asserted against the Underwriter

6 Defendants.  (See Order Granting in Part and Denying in Part Underwriter Defendants'

7 Motion to Dismiss; Granting Individual Defendants' Motion to Dismiss, filed August 5, 2005,

8 at 72.)  In an order filed September 12, 2005, the Court granted plaintiffs' motion for

9 reconsideration of the dismissal of the § 11 and § 15 claims as asserted against Hancock.

10 (See Order Granting Plaintiffs' Motion for Reconsideration, filed September 12, 2005, at 4.)

11 Thus, the remaining claims in the instant action are the § 11 claim, as asserted against the

12 Underwriter Defendants and Hancock, and the § 15 claim, as asserted against Hancock.

13    On April 28, 2006, the Court dismissed the § 11 and § 15 claims asserted by lead

14 plaintiffs Klein, Teresi and Friedman, based on their express statements that they were not

15 asserting claims for violations of § 11 and had no other active claims.  (See Order Granting

16 in Part and Denying in Part Motion for Involuntary Dismissal, filed April 28, 2006.)  On May

17 9, 2006, the Court dismissed all claims asserted by Fox, for failure to prosecute.  (See

18 Order Dismissing Named Plaintiff Martin Fox, filed May 9, 2006.)  Consequently, Welch is

19 the sole remaining named plaintiff.[1]

20    With respect to the § 11 claim, Welch alleges the registration statements and

21 prospectuses issued in connection with the February 6, 2001 stock and note offerings by

22 Exodus Communications, Inc. ("Exodus") "contained untrue statements of material fact or

23 omitted to state material facts required to be stated therein or necessary to make the

24 statements therein not misleading."  (See CTAC ¶¶ 343-355.)  Welch alleges he purchased

25 Exodus shares that are "traceable to Exodus's February 6, 2001 secondary offering of

26 common stock."  (See id. ¶ 25.)

27

28    [1] Two motions to intervene as named plaintiffs are before the Court, and will be addressed in separate orders.

2

1
**LEGAL STANDARD**

2          Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as

3    to "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions,

4    answers to interrogatories, and admissions on file, together with the affidavits, if any, show

5    that there is no genuine issue as to any material fact and that the moving party is entitled to

6    judgment as a matter of law."  See Fed. R. Civ. P. 56(b), (c).  Material facts are those that

7    may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

8    248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a

9    reasonable jury to return a verdict for the nonmoving party.  See id.  The Court may not

10   weigh the evidence.  See id. at 255.  Rather, the nonmoving party's evidence must be

11   believed and "all justifiable inferences must be drawn in [the nonmovant's] favor."  See

12   United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989)

13   (en banc) (citing Liberty Lobby, 477 U.S. at 255).

14          The moving party bears the initial responsibility of informing the district court of the

15   basis for its motion and identifying those portions of the pleadings, depositions,

16   interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the

17   absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317,

18   323 (1986).  Where the nonmoving party will bear the burden of proof at trial, the moving

19   party's burden is discharged when it shows the court there is an absence of evidence to

20   support the nonmoving party's case.  See id. at 325.

21          A party opposing a properly supported motion for summary judgment "may not rest

22   upon the mere allegations or denials of [that] party's pleading, but . . .  must set forth

23   specific facts showing that there is a genuine issue for trial."  See Fed. R. Civ. P. 56(e); see

24   also Liberty Lobby, 477 U.S. at 250.  The opposing party need not show the issue will be

25   resolved conclusively in its favor.  See Liberty Lobby, 477 U.S. at 248-49.  All that is

26   necessary is submission of sufficient evidence to create a material factual dispute, thereby

27   requiring a jury or judge to resolve the parties' differing versions at trial.  See id.

28   / /

3

1                                    **DISCUSSION**

2          Section 11 provides, in relevant part, that if "any part of the registration statement,

3   when such part became effective, contained an untrue statement of a material fact or

4   omitted to state a material fact required to be stated therein or necessary to make the

5   statements therein not misleading, any person acquiring such security . . . may . . . sue[.]"

6   See 15 U.S.C. § 77k(a).  To have standing to assert a claim that a registration statement

7   violates § 11, the plaintiff must show that he "purchased a security under that, rather than

8   some other, registration statement."  See Hertzberg v. Dignity Partners, Inc., 191 F.3d

9   1076, 1080 (9th Cir. 1999); see also Krim v. pcOrder.com, Inc., 402 F.3d 489, 500 (5th Cir.

10  2005) ("Congress conferred standing on those who actually purchased the tainted stock,

11  not on the whole class of those who possibly purchased tainted shares[.]") (emphases in

12  original).  "If there is a mixture of pre-registration stock and stock sold under the misleading

13  registration statement, a plaintiff must either show that he purchased his stock in the initial

14  offering or trace his later-purchased stock back to the initial offering."  See Hertzberg, 191

15  F.3d at 1080 n.4.[2]

16         In Welch's certification pursuant to 15 U.S.C. § 78u-4(a)(2), dated August 23, 2001,

17  Welch attests that he purchased 300 shares of Exodus stock on February 6, 2001, at

18  $19.065 per share, and thereafter, on April 18, 2001, purchased an additional 200 shares

19  at $10.44 per share.  (See Harting Decl. Ex. A.)  Welch further confirmed such purchases

20  in his responses to Hancock's First Set of Interrogatories, dated March 8, 2006.  (See

21  Harting Decl. Ex. B at 6-7 (Response to Interrogatory No. 1).)

22         Hancock's expert on tracing, Anil Shivdasani, Ph.D. ("Dr. Shivdasani"), attests that

23  because Welch purchased Exodus shares on February 6, 2001 at a price higher than the

24  February 6, 2001 offering price of $18.50 per share, Welch did not purchase his shares in

25  _____

26         [2] Welch's § 15 claim is derivative of his § 11 claim; if he lacks standing to assert a
    § 11 claim, he likewise lacks standing to assert his § 15 claim.  See, e.g., In re Daou

27  Systems, Inc. Securities Litigation, 411 F.3d 1006, 1029 (9th Cir. 2005) ("Section 15(a) of
    the 1933 Securities Act imposes joint and several liability upon every person who controls

28  any person liable under sections 11 or 12."); Falkowski v. Imtation Corp., 309 F.3d 1123,
    1132 n.2 (9th Cir. 2002) (noting § 15 does not set forth "separate grounds for liability").

                                                4

1  that offering.  (See Shivdasani Decl. ¶ 7.)  Dr. Shivdasani further attests that there were

2  more than 550 million Exodus shares outstanding immediately after the February 6, 2001

3  offering, only 13 million of which shares were issued in the February 6, 2001 offering.  (See

4  id. ¶ 8.)  According to Dr. Shivdasani, it is not customary to keep track of the origin of

5  shares issued in a "secondary market transaction," such as the February 6, 2001 offering,

6  "because shares of the same class have the same cash flow and governance rights,

7  making them virtually indistinguishable from each other."  (See id.)  Consequently, Dr.

8  Shivdasani opines, "it is not possible to trace the shares purchased by Mr. Welch to the

9  equity offering on February 6, 2001."  (See id.)

10        On April 28, 2006, the Court granted Welch's motion, pursuant to Rule 56(f) of the

11  Federal Rules of Civil Procedure, to continue the hearing on the motion for summary

12  judgment to June 9, 2006 to afford Welch the opportunity to complete pending discovery. In

13  his current response, filed May 19, 2006, however, Welch sets forth no evidence or

14  argument that his shares are traceable to the February 6, 2001 offering.  Rather, Welch

15  argues that the Court should continue the hearing on the motion for summary judgment

16  until some unspecified time after the Court rules on the pending motion by Ellen Brodsky

17  ("Brodsky") to intervene as plaintiff, in order to "conserve the resources of the Court and the

18  parties."  (See Response at 4.)  The issue of whether Brodsky may intervene in the instant

19  action, however, has no relationship to the issue of whether Welch has standing to sue.

20        Welch also requests a further Rule 56(f) continuance, on the ground that certain

21  discovery identified in Welch's previous Rule 56(f) submission remains incomplete.  In

22  particular, Welch states in his response, without citation to a declaration, that, on April 26,

23  2006, he provided "financial information, requested by the Underwriter Defendants to

24  conduct additional searches" for unspecified documents and information that might identify

25  him as a purchaser of Exodus securities in the February 6, 2001 offering or trace his stock

26  purchases to that offering.  Welch further states he "has received no response concerning

27

28

5

1  the results of the supplemental searches conducted with that information."[3]  (See Response

2  at 3-4.)  Welch fails to identify, however, the documents and information he expects to

3  obtain from the Underwriter Defendants, and fails to explain how such documentation will

4  preclude summary judgment.  A party seeking a Rule 56(f) continuance "must show how

5  additional discovery would preclude summary judgment."  See Mackey v. Pioneer Nat'l

6  Bank, 867 F.2d 520, 524 (9th Cir. 1989).  In particular, the party seeking a continuance

7  must specifically identify relevant existing information that he needs, and make clear how

8  that information would allow such party to successfully oppose the motion.  See id.; see

9  also Wellman v. Writers Guild of Am., West, Inc., 146 F.3d 666, 674 (9th Cir. 1998)

10  (holding district court did not err by denying Rule 56(f) motion where it determined that

11  desired evidence was unnecessary to plaintiff's case and plaintiff did not explain how

12  information he sought would preclude summary judgment).  "The mere hope that further

13  evidence may develop prior to trial is an insufficient basis for a continuance under Fed. R.

14  Civ. P. 56(f)."  Continental Maritime of San Francisco, Inc. v. Pacific Coast Metal Trades

15  District Council, 817 F.2d 1391, 1395 (9th Cir. 1987).  Because Welch has failed to identify

16  specific information in the possession of the Underwriter Defendants that he needs and that

17  would preclude summary judgment, Welch has not set forth good cause for a further Rule

18  56(f) continuance.[4]

19      In sum, the evidence is undisputed that Welch did not purchase Exodus shares in

20  the February 6, 2001 offering, and Welch has submitted no evidence tracing his shares to

21  that offering.

22

23

24  [3] Welch's previous Rule 56(f) motion was based, in part, on his assertion that he had
    not received a response to the subpoena he served on his broker, Ameritrade, seeking all
25  documents relating to his transactions in Exodus securities.  In Welch's current response,
    he does not contend such discovery remains outstanding.

26  [4] The Court further notes that in connection with defendants' reply, counsel for the
    Underwriter Defendants attests that the Underwriter Defendants have conducted the
27  supplemental searches requested by Welch and "found no documents or other information
    relating to whether Mr. Welch purchased Exodus common stock in Exodus' February 2001
28  secondary offering or traceable to that offering."  (See Collins Decl. ¶ 4.)

6

1

**CONCLUSION**

2      For the reasons set forth above, defendants' motion for summary judgment in favor

3  of defendants and against Welch is hereby GRANTED, on the ground Welch lacks standing

4  to assert a claim under § 11.

5      This order terminates Docket No. 289.

6      **IT IS SO ORDERED.**

7  Dated: June 2, 2006                           MAXINE M. CHESNEY
                                                  United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7